

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-1999

# Wolk v. UNUM Life Ins Co

Precedential or Non-Precedential:

Docket 98-3542

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Wolk v. UNUM Life Ins Co" (1999). *1999 Decisions.* Paper 183.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/183

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 30, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3542

JANICE BOWERS WOLK,
       Appellant,

v.

UNUM LIFE INSURANCE OF AMERICA

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 96-cv-00356)
(District Judge: Honorable Robert J. Cindrich)

ARGUED FEBRUARY 19, 1999

BEFORE: GREENBERG, LEWIS, and BRIGHT,*
Circuit Judges.

(Filed June 30, 1999)

        DEBRA S. TODD (ARGUED)
        Todd & Associates
        112 Washington Place
        Chatham Towers Professional Suites,
         Suite 1-C
        Pittsburgh, PA 15219

         Attorney for Appellant

_____

* Honorable Myron H. Bright, Senior Circuit Judge for the United States
Court of Appeals for the Eighth Circuit, sitting by designation.

          WILLIAM J. ROGERS (ARGUED)
          Thomson, Rhodes & Cowie
          Two Chatham Center, Suite 1010
          Pittsburgh, PA 15219-3499

           Attorney for UNUM Life Insurance
           of America

OPINION OF THE COURT

LEWIS, Circuit Judge.

In this appeal, we must determine whether the term
"beneficiary," as defined under the Employee Retirement
Income Security Act ("ERISA"), 29 U.S.C. S 1002(8),
includes partner-employers who are designated to receive
benefits under an "employee welfare benefit plan."1 We
conclude that it does. Accordingly, we will affirm the
judgment of the District Court.

I.

Janice Bowers Wolk is an attorney and former corporate
tax partner at the Pittsburgh law firm of Eckert, Seamans,
Cherin & Mellot ("Eckert Seamans" or "thefirm"). Since
1978, Eckert Seamans has provided its employees with
disability insurance coverage under a group long term
insurance policy issued by UNUM Life Insurance Company
of America ("UNUM"). Originally, the policy did not provide
disability coverage for the firm's partners. However, on
December 21, 1990, Eckert Seamans replaced the existing
policy with a new policy that continued disability coverage

_____

1. ERISA defines an "employee welfare benefit plan" as:

        any plan, fund, or program which was . . . or is . .. established
or
        maintained by an employer . . . for the purpose of providing for
its
        participants or their beneficiaries, through the purchase of
        insurance or otherwise, (A) medical, surgical, or hospital care or
        benefits, or benefits in the event of sickness, accident,
disability,
        death or unemployment . . . .

29 U.S.C. S 1002(1).

2

for the firm's employees and added coverage for the firm's partners (the "1990 Policy").[2]

In May 1990, Wolk was diagnosed with chronic fatigue syndrome -- a debilitating illness that causes extreme fatigue, general flu-like symptoms and difficulty with concentration. Through 1992, Wolk's condition deteriorated to the point where she could no longer function as a partner at the firm. As a result, Wolk terminated her partnership effective March 31, 1993.

Shortly thereafter, Wolk applied to UNUM for disability benefits pursuant to the 1990 Policy. UNUM approved Wolk's application and commenced disability payments effective April 1, 1993. The payments continued without incident until March 23, 1995, at which time, UNUM informed Wolk that it had determined that she was no longer disabled and that it would terminate her benefits effective March 27, 1995.

On February 27, 1996, Wolk filed suit against UNUM in the United States District Court for the Western District of Pennsylvania. The complaint alleged a variety state-law claims, including breach of contract, bad faith, and breach of good faith and fair dealing.[3] That same day, UNUM notified Wolk that it was reversing its decision to deny her

_____

2. Under the 1990 Policy, partners and the executive director of the firm were designated as Class One of the defined eligible classes. Associates and certain other professional employees were designated as Class Two. All other employees were designated as Class Three. Partners paid the entire cost of their disability insurance coverage. No contribution was required from the firm's Class Two and Class Three employees.

3. More specifically, Wolk alleges that UNUM terminated her benefits without providing any prior indication of its intention, or of a need for additional information or testing concerning her condition. Wolk also maintains that despite her repeated requests, UNUM failed to adequately explain the reason for the termination of benefits. Further, she asserts that UNUM engaged in a consistent pattern of bad faith, which included its failure to conduct a good faith investigation into the facts of her claim. Finally, Wolk contends that UNUM "unnecessarily dragged out the `investigation' of her claim causing her to go without the disability benefits to which she was entitled for fourteen months, and to incur substantial attorneys' fees in her struggle to compel UNUM to reinstate her benefits." Appellant's Brief at 12.

3

benefits. On May 22, 1996, UNUM resumed Wolk's disability payments and issued her a check for back benefits.4 Presently, Wolk receives all monthly benefits from UNUM, as well as disability benefits from the Social Security Administration.

On December 6, 1996, UNUM filed a motion for summary judgment on the grounds that ERISA preempted Wolk's state-law claims. On March 31, 1998, the District Court granted UNUM's motion for summary judgment, finding that partner-employers who share coverage under a common disability insurance policy with employees are "beneficiaries" as defined in ERISA. Thus, the District Court held that Wolk's state-law claims against UNUM were subject to ERISA's preemptive provisions. In so holding, the District Court granted Wolk leave to amend her complaint to assert an ERISA cause of action. On June 22, 1998, the District Court granted Wolk's motion to certify its March 31, 1998 order for interlocutory appeal pursuant to 28 U.S.C. S 1292(b), and we granted leave to appeal.

We have jurisdiction over this appeal pursuant to 28 U.S.C. S 1292(b). We review a District Court's grant of summary judgment de novo. See Antol v. Perry, 82 F.3d 1291, 1294-95 (3d Cir. 1996).

II.

Before we turn to the dispute, it is important to note the areas of agreement between Wolk and UNUM. First, the parties agree that the 1990 Policy is an "employee welfare benefit plan" as defined in ERISA, 29 U.S.C.S 1002(1). Second, it is undisputed that Wolk, in her complaint, alleges that UNUM unlawfully deprived her of benefits to which she was entitled under the 1990 Policy. Third, the parties acknowledge that ERISA provides the exclusive remedy for those covered by an ERISA plan who seek to

_____

4. UNUM delivered a check to Wolk in the amount of $59,374.39, representing benefits from March 27, 1995 through May 27, 1996, less offsetting Social Security disability benefits. On June 20, 1996, UNUM issued Wolk a check in the amount of $3,197.50, representing interest on her back benefits at the rate of six percent.

enforce their rights under such a plan. See 29 U.S.C.
S 1144(a).

However, the parties diverge on the question of whether
Wolk, as a partner-employer of Eckert Seamans, is
authorized to bring a civil action under ERISA. Wolk argues
that because a law firm partner is an employer, not an
employee, she cannot be a "participant" or"beneficiary" of
an ERISA plan, and thus is not eligible to file suit under
ERISA. Therefore, she maintains that she is entitled to
pursue her common law remedies without reference to, or
reliance on, ERISA.

In opposition, UNUM contends that Wolk's partnership
status, though relevant to the question of whether she is a
"participant" under the 1990 Policy, does not affect her
status as a "beneficiary" under the plan. Thus, because
Wolk receives benefits under the 1990 Policy, UNUM
asserts that she must be subject to ERISA when pursing
claims against the insurer.

We have not ruled on the limited question of whether a
partner-employer who shares coverage with employees
under an "employee welfare benefit plan" qualifies as a
"beneficiary" with standing to bring suit under ERISA.
However, we believe ERISA's plain statutory language
provides a clear answer.

A.

We must begin our analysis with an examination of
ERISA's statutory language because " `absent a clearly
expressed legislative intention to the contrary, that
language must ordinarily be regarded as conclusive.' "
Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S.
827, 835 (1990) (quoting Consumer Product Safety Comm'n
v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)); see also
Idahoan Fresh v. Advantage Produce, Inc., 157 F.3d 197,
202 (3d Cir. 1998) ("[w]here the statutory language is plain
and unambiguous, further inquiry is not required, except in
the extraordinary case where a literal reading of the
language produces an absurd result.").

Under ERISA, "[a] civil action may be brought-- (1) by a
participant or beneficiary -- (B) to recover benefits due to

5

him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. S 1132(a)(1)(B). ERISA defines the term "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. S 1002(7). A "beneficiary" is a "person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. S 1002(8) (emphasis added).

To reiterate, it is undisputed that the 1990 Policy qualifies as an employee benefit plan under ERISA. It also is undisputed that partners of Eckert Seamans are designated to receive benefits under the 1990 Policy -- indeed, Wolk applied for, and is currently receiving, benefits from UNUM pursuant to the 1990 Policy. Applying the plain language of the statue to these facts, Wolk fits squarely within the second category of ERISA's definition of a plan "beneficiary." Thus, we conclude that Wolk is a "beneficiary" under the 1990 Policy.

We also find it significant that all of the Courts of Appeal that have analyzed the term "beneficiary" in a similar context have adopted this plain language interpretation. See, e.g., Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1351 (11th Cir. 1998) ("[physician's] claim for benefits under the policy confirms his status as a plan beneficiary."); Prudential Ins. Co. v Doe, 76 F.3d 206, 208 (8th Cir. 1996) (shareholders of corporation were "beneficiaries" of ERISA plan because they were designated to receive benefits by the terms of the employee benefit plan); Peterson v. American Life & Health Ins. Co., 48 F.3d 404, 409 (9th Cir. 1995) (partner was "beneficiary" under ERISA because "any person designated to receive benefits from a policy that is part of an ERISA plan may bring a civil suit to enforce ERISA"); Harper v. American Chambers Life Ins. Co., 898 F.2d 1432, 1434 (9th Cir. 1990) (partner insured by policy that is part of an ERISA plan has standing to sue under ERISA as a "beneficiary").5

_____

5. Although Wolk cites to a number of Court of Appeals decisions where the court held that an employer did not have standing to sue under

6

Wolk contends that it would be contrary to the "clearly expressed legislative intention" of Congress for us to apply a plain language interpretation to section 1002(8). In particular, Wolk argues that such an interpretation is: (1) inconsistent with the use of the term "beneficiary" in the other provisions of ERISA; and (2) conflicts with ERISA's fundamental requirement that no plan asset may inure to the benefit of an employer. We disagree.

With respect to her first argument, Wolk maintains that the term "beneficiary" is used throughout ERISA to refer to persons who are designated by participants to receive benefits. See, e.g., 29 U.S.C. S 1001(b) (declaring it the policy of ERISA to protect "the interests of participants in employee benefit plans and their beneficiaries"); 29 U.S.C. S 1002(1) (defining "employee welfare benefit plan" as a plan that is established or maintained "for the purpose of providing for its participants or their beneficiaries") (emphasis added in all). According to Wolk:

> [i]f UNUM's interpretation were correct, the language would read that an ERISA plan must provide for "its participants or its beneficiaries." The only logical reconciliation of these provisions is that the language of the statute (referring to those designated to receive

_____

ERISA, we believe these cases are distinguishable. More specifically, unlike the cases cited above, none of the decisions cited by Wolk engaged in an in-depth analysis of the term "beneficiary," nor did they address the same factual situation at issue here. See, e.g., Meredith v. Time Ins. Co., 980 F.2d 352, 358 (5th Cir. 1993) (insurance plan purchased by sole proprietor, covering only herself and her spouse, did not constitute "employee welfare benefit plan"); Fugarino v. Hartford Life and Accident Ins. Co., 969 F.2d 178, 185-86 (6th Cir. 1992) (health insurance plan whose sole beneficiaries were company's owners cannot qualify as an "employee benefit plan" under ERISA; nor can employers qualify as "participants" of an ERISA plan); Kwatcher v. Massachusetts Service Employees Pension Fund, 879 F.2d 957, 959-60 (1st Cir. 1989) (ERISA's anti-inurement provision prohibits payments to employer from qualified pension plan); Giardono v. Jones , 867 F.2d 409, 411-12 (7th Cir. 1989) (sole proprietor cannot be "participant" of ERISA plan); Peckham v. Board of Trustees of the Int'l Brotherhood of Painters, 653 F.2d 424, 426-27 (10th Cir. 1981) (ERISA's anti-inurement provision prohibits employers from participating in employee pension benefit plans).

benefits "by the terms of an employee benefit plan") is meant to encompass nothing more than a designation supplied by the terms of the employee benefit plan in lieu of a designation by the employee/participant. .. . Therefore, the plain reading of the statute would indicate that Congress understood "beneficiaries" to be individuals designated by participants, or supplied by operation of law in the absence of such designation.

Appellant's Reply Brief at 5.

We fail to see how Wolk's interpretation is the"only logical reconciliation" of ERISA's use of the term "beneficiary." At most, it is just another way that ERISA's definition of a plan "beneficiary" might be satisfied -- since persons designated by operation of law are, by definition, "designated by the terms of the plan." The fact that "beneficiary" is used in other provisions of ERISA to refer to the beneficiaries of a participant does not necessarily mean that the term was only intended to refer to such persons. In defining the term, Congress was careful to include a category for the designees of a participant as well as a category for those designated by the terms of an ERISA plan. See 29 U.S.C. S 1002(8). Were we to limit the second category to those designated by operation of law, we would be overstepping our bounds as a court of law. See Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980) (stating that courts must "respect the compromise embodied in the words chosen by Congress. It is not our place simply to alter the balance struck by Congress in procedural statutes by favoring one side or the other in matters of statutory construction."). If Congress did not intend the phrase "by the terms of an employee benefit plan" to mean what it says, it is for Congress alone to correct. See Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

Moreover, there is second compelling reason for adopting a plain language interpretation of section 1002(8). As several courts of appeals have noted, "[t]o hold otherwise would create the anomaly of requiring some insureds to pursue benefit claims under state law while requiring

8

others covered by the identical policy to proceed under ERISA. Such a scenario would frustrate Congress's intent of achieving uniformity in the law governing employment benefits." Peterson, 48 F.3d at 409; see also Prudential, 76 F.3d at 210; Madonia v. Blue Cross & Blue Shield of Virginia, 11 F.3d 444, 450 (4th Cir. 1993). We believe this rationale provides a logical explanation for why Congress chose to include persons designated "by the terms of an employee benefit plan" in the definition of "beneficiary." Accordingly, Wolk's argument is inadequate to overcome the statute's plain language. See Mertens v. Hewitt Assoc., 508 U.S. 248, 261-62 (1993) ("vague notions of a statute's `basic purpose' are . . . inadequate to overcome the words of its text. . . . This is especially true with legislation such as ERISA, an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests . . . ." (citations omitted)).

We also do not believe that the 1990 Policy invokes the concerns of ERISA's anti-inurement provision. See 29 U.S.C. S 1103(c)(1). ERISA's anti-inurement provision is directed at plan assets -- i.e., "assets accumulating in trust and pension funds." Engelhardt, 139 F.3d at 1351. In Prudential, the court described the purpose of the anti-inurement provision as follows:

> the legislative history involving the [anti-inurement provision] indicates congressional concern over the wrongful diversion of trust assets and the administrative integrity of benefit plans. Section 1103(c)(1) and 29 U.S.C. S 1104(a) deal with fiduciary duties for plan administrators and employers. Congress included these provisions in order to make the law of trusts applicable to the plans and to eliminate such abuses as self-dealing imprudent investing, and misappropriation of plan funds.

Prudential, 76 F.3d at 209 (internal citations omitted). However, the present case does not implicate these concerns. The 1990 Policy was administered exclusively by UNUM. The extent of Eckert Seamans involvement was the processing of paperwork and the payment of premiums for its employees. UNUM made all of the substantive decisions regarding the eligibility or ineligibility of beneficiaries for

9

disability benefits, and paid all of the recovery benefits out of its own funds. In short, Eckert Seamans did not exercise the type of control over the funds used to pay out disability benefits under the 1990 Policy that gives rise to the concerns of the anti-inurement provision. Accordingly, we do not believe ERISA's anti-inurement provision is an appropriate basis for deviating from the plain language of the statute.

III.

Because there is nothing in ERISA to advise against applying the plain language of section 1002(8) to Wolk's claims, we hold that Wolk is a "beneficiary" with standing to bring suit under ERISA. As a result, Wolk's state-law claims against UNUM, which derive from the 1990 Policy, are preempted by section 1144(a). Accordingly, the District Court's order granting summary judgment in favor of UNUM and allowing Wolk to amend her complaint to assert a cause of action under ERISA will be affirmed.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit